IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT PEREZ : | |
|         **Plaintiff** : | |
| : | |
| v. : | CIVIL ACTION NO. 22-493 |
| : | |
| MR. JOHN WETZEL, : | |
| MR. JAIME SORBER : | |
| and JANE/JOHN DOE, : | |
| *MEDICAL SUPERVISOR* : | |
|         **Defendants.** : | |

## MEMORANDUM

**McHUGH, J.**                                                                                                                               **May 20, 2022**

      This is a civil rights action brought by a state prisoner proceeding pro se, who alleges Eighth Amendment violations arising out of inadequate medical care related to the COVID-19 pandemic. Although the facts alleged could suffice to prove that prison officials failed to adhere to all best practices outlined by the CDC to prevent the spread of the virus, their actions do not rise to the level of deliberate indifference. I must therefore grant Defendants' Motion to Dismiss.

**I.**     **Statement of Facts and Procedural History**

      Plaintiff Albert Perez is a prisoner of the Pennsylvania Department of Corrections housed at S.C.I. Phoenix in Collegeville, Pennsylvania. Compl. ¶ 1, ECF 1-1. Mr. Perez alleges that during the month of November 2021, he had multiple contacts with Joshua Wright and Todd Faubert, the counselor and unit manager of P-unit, where he was housed. *Id.* ¶¶ 10,11. In early December 2021, he was informed that Mr. Wright and Mr. Faubert had COVID-19. *Id.* ¶ 12. Yet the prison administration failed to implement contact tracing, institute a lockdown, or test those living in P-Unit. *Id.* ¶ 14. On December 9, 2021, Mr. Perez was seen by medical staff. *Id.* ¶ 13.

Despite having a fever, he was told by the medical staff that he just had a cold and did not need to quarantine. *Id.* ¶ 13.

In fact, Mr. Perez had contracted COVID-19, although the record is unclear as to when. *Id.* ¶ 18. On the evening of December 11, 2021, he had to be carried to the medical unit by correctional officers because he "could not breath[e] and was coughing severely." *Id.* ¶ 15. He then was placed in the Special Observation Unit and provided oxygen assistance. On December 13, 2021, he was rushed to the Einstein Montgomery Hospital Emergency Room because his oxygen saturation levels had dipped to 80. *Id.* ¶ 17.

Mr. Perez spent one week receiving oxygen. In addition to contracting COVID-19, he contracted pneumonia. *Id.* ¶ 18. Months after contracting the virus, he continued to experience severe difficulty breathing. *Id.* ¶ 19. And as of the date he filed the lawsuit at issue, he continued to suffer from ongoing symptoms COVID symptoms including "brain fog," depression, a lack of concentration, difficulty focusing, and memory issues. *Id.*

Mr. Perez filed suit in Montgomery County Court of Common Pleas against John Wetzel, the Secretary of the Department of Corrections, Jaime Sorber, the Superintendent of S.C.I. Phoenix, and Jane/John Doe, the Medical Supervisor of S.C.I. Phoenix, alleging deliberate indifference to his medical needs in violation of the United States and Pennsylvania Constitutions. *Id.* ¶¶ 22-25. Defendants removed the action and now move to dismiss. Mot. to Dismiss, ECF 5.

**II.     Standard of Review**

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

In the context of *pro se* prisoner litigation, the court must be mindful that pleadings are "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint must

be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### III.     Discussion

To state a claim for deliberate indifference to a prisoner's health and safety in violation of the Eighth Amendment, a plaintiff must allege (1) an objectively serious risk to the incarcerated person's health or safety; and (2) that defendant prison officials were deliberately indifferent to the risk through their acts or omissions. *Porter v. Pa. Dep't of Corr.,* 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Pennsylvania Constitution's prohibition against cruel and unusual punishment is "coextensive with the Eighth and Fourteenth Amendment of the United States Constitution." *Commonwealth v. Olds*, 192 A.3d 1188, 1190 n.3 (Pa. Super. Ct. 2018). The Supreme Court of Pennsylvania has held, "[t]he guarantee against cruel and unusual punishment contained in the Pennsylvania Constitution provides no greater protections than that afforded under the Eighth Amendment to the United States Constitution." *Jochen v. Horn*, 727 A.2d 645, 649 (Pa. Commw.1999).

Prison officials are deliberately indifferent when they know of and disregard excessive risks to a prisoner's health or safety. *Id.* (citing *Farmer*, 511 U.S. at 837). This is a subjective standard: "the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (quoting *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005)). The Third Circuit has found deliberate indifference "in a variety of circumstances, including where the prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays a necessary medical treatment based on a non-medical

reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Plaintiff advances two claims: that inadequate preventative measures caused him to become infected with COVID, and that, following his infection, the care he received was both inadequate and delayed. As to prevention, Mr. Perez pleads that he had substantial contact with two prison employees in November 2021, and was advised in early December that they had tested positive for COVID. Mr. Perez first experienced symptoms as of December 9, and the Complaint presumes that these individuals were the source. He does not specify when his last contact with the employees occurred or provide details relevant to determining whether the employees would have been contagious in his presence. Nor does he allege that these employees continued to interact with prisoners and staff after testing positive for the virus. He contends that under the COVID protocols then in place, prison officials were obligated to implement contact tracing, institute a lockdown, test those living in P-Unit, and provide timely medical care, but that the officials failed to implement these practices. The protocols are not cited, but are available for review, *COVID-19 and the DOC*, DEPARTMENT OF CORRECTIONS, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited May 19, 2022). [1]

---

[1] The Court may take judicial notice of this information, as it is publicly available on a governmental website. *See Vanderklok v. United States*, 868 F.3d 189, 205 n. 16 (3d Cir. 2017).

Although the Department of Corrections' COVID-19 website does not discuss its practices regarding testing, contact tracing, and quarantining prisoners, it notes that it is fully compliant with the CDC testing guidelines, *see COVID-19 and the DOC*, and the CDC guidance for correctional facilities recommends "diagnostic testing...for anyone who shows signs or symptoms of COVID-19 and for anyone who has been potentially exposed" to the virus. *Guidance on Prevention and the Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited May 19, 2022).

As to his care after acquiring the virus, Mr. Perez argues that there was unreasonable delay in treating him because he complained and sought testing on December 9 when he had a fever but was not admitted to the infirmary until December 11.[2] Significantly, Mr. Perez does not contend that the prison ignored the pandemic, but rather that the Department of Corrections violated its protocols. ECF 1-1, ¶24. The protocols Plaintiff invokes are extensive. As set forth at length by Judge Kane of the Middle District, the Pennsylvania Department of Corrections had in place measures to protect prisoners in response to the pandemic. *Bevins v. Kauffman,* 2021 W.L. 322168 (M.D. Pa. Feb. 1, 2021). While Plaintiff alleges that they did not follow the protocols in his individual case, he does not plead that this failure was part of a larger systemic pattern of noncompliance with the stated policies. Significantly, among other things, vaccination was available, which substantially reduces the risk of serious illness. *See COVID-19 and the DOC*, DEPARTMENT OF CORRECTIONS, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited April 29, 2022) (DOC offers on-site vaccination against COVID-19 to all incarcerated staff at every state correctional institution in Pennsylvania.).[3] Moreover, the Department had instituted other policies to prevent the spread of the virus and mitigate the harm it causes, including enhanced screening and quarantining of new prisoners, the use of masks, and enhanced screening and temperature checks for staff. Plaintiff alleges only that in this instance, the protocols were violated, placing him at risk, and deliberate indifference requires "something more culpable on the part of

---

[2] The Complaint does not allege he was refused a test on December 9 when he was seen by medical staff; that allegation appears only in his response to the motion, Def's Resp. ¶¶ 6,7. Technically, it is not part of the pleadings, but I consider as a fact that could be alleged.

[3] As of November 2021, the DOC offered on site-vaccination against COVID-19 to all prisoners and staff at every state correctional institution in Pennsylvania. *See Mincey v. Wetzel*, No. 1:20-CV-717, 2021 WL 5112277 at *3 (M.D. PA 2021) (citing the DOC website in November 2021).

officials than a negligent failure to recognize" the risk of harm to a prisoner.  *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005)).

So too, when Mr. Perez saw medical staff on December 9, 2021, and alleges he was running a fever, but was not immediately placed in medical isolation, there may have been negligence at the hands of prison officials, but not the type of conduct so egregious that it can be deemed a deprivation of life's necessities.  *Griffin v. Vaughn,* 113, F.3d 703, 709 (3d Cir. 1997).  And by Mr. Perez's own admission he was transferred to the medical unit on December 11 when it was clear that his condition was serious.

### IV.    Conclusion

The serious symptoms that Mr. Perez alleges to have has suffered from contracting COVID-19 are deeply regrettable.  But even if Defendants can be faulted for their implementation of the pandemic measures they adopted, or for the adequacy of their response to Plaintiff's situation, their conduct does not rise to the level of deliberate indifference under the United States or the Pennsylvania Constitutions.  I am therefore obligated to grant the motion to dismiss.  An appropriate order follows.

 /s/ Gerald Austin McHugh
United States District Judge